#### STATE, Plaintiff, v. KEARNS, Defendant.

Common Pleas Court, Franklin County.

No. 35006.   Decided February 26, 1955.

72

Robert E. Albright, Justin L. Sillman, Rush Warren, Columbus, for the state.

John J. Chester, Columbus, for defendant.

**OPINION**

By BARTLETT, J.

1. The motion to quash the indictment is SUSTAINED.

2. Sec. 12873 GC (now §2919.01 R. C.), in force at the time named therein and on which the indictment herein is based, particularly applies to treasurers—state, county, township, city—and other officers whose duties are similar, and not to prosecuting attorneys who are merely authorized by law to incur expenses in the performance of the duties of their office and in furtherance of justice, which are paid by the issuance of warrants on the county treasury by the auditor payable to the prosecuting attorney or such other person as he may name, and the county treasurer disburses said public money to the person named in said warrant.

**3. Prosecuting attorneys as such are not officers charged with the collection, receipt, transfer, safe-keeping and disbursement of public money belonging to the county, as described in said §12873 GC.**

The indictment in this case charges that Frank H. Kearns on or about the 6th day of March, 1953, was the duly elected Prosecuting Attorney of Franklin County, then and there charged, with the receipt, safe keeping and disbursement of public money belonging to said county, which public money came into his possession by virtue of public office under §3004 GC, which public money he did then and there embezzle and convert to his own use in the sum of $210.00.

The defendant has filed a motion to quash the indictment.

It is argued by counsel for the defendant that it is for the prosecuting attorney alone to judge the necessity of the expenditure of such funds in the performance of his official duties, and in the furtherance of justice; and if in the opinion of the prosecutor, any expenditure from those funds is for said purposes, it is almost impossible for anyone to say, as a matter of law, that the expenditures are illegal.

In fact it is further argued that since the prosecutor is not required to account to anyone for the use of said funds, no one has any authority to question the judgment of the prosecuting attorney in the use of said funds and that such funds may often be used in secret investigations about which it is proper that no one else have any information other than the prosecutor and his assistants. Certain opinions of different attorney generals are cited in support of these views. It must be remembered that these opinions are to the effect that the prosecutor need not account to other officials in detail as to such expenditures, and other officials have no right to question the necessity thereof. Consequently, the bureau of inspection and supervision of public offices in the examination of the prosecutor's office as required by law, do not scrutinize the legality of such expenditures or question the judgment of the prosecutor in the use of such funds, with the same exactness that the expenditures of other offices are supervised, due to the spirit and view of such opinions of the attorney general. The spirit of the law is that the prosecutor shall have the utmost freedom in the use of such funds for the purposes authorized by law.

This is a far cry from any theory that the law authorizes such funds to be used by the prosecutor to pay his personal expenses. "when he is off on a frolic of his own." The examiner of public offices may not be permitted to question the judgment of the prosecutor in the spending of such funds, but this does not justify the use of such funds for his own needs and pleasure. The difficulty of proof offers no support for a motion to quash an indictment for the embezzlement of public funds. As pointed out by counsel for the state, if there is no duty to account for the expenditure of such funds by the prosecutor, then it is an ideal formality for the law (§3004 GC) authorizing such expenditures, to require as it does, "that nothing shall be paid under this section until the prosecuting attorney shall have given bond to the state in a sum not less than his official salary"; and further provides the prosecuting attorney shall annually file with the county auditor "an itemized statement, duly verified by him, as to the manner in which such fund has been expended during the current year," and pay the unexpended balance in his hands, if any, forthwith into the county treasury. It may be that the examiner has no

right to question the judgment of the prosecutor in his use of this fund, but the State of Ohio has the right to insist that such funds be used only for the legitimate purposes authorized by law.

The indictment in the instant case is founded upon §12873 GC in force at the time in question (now §2919.01 R. C.), on the theory that the defendant as prosecuting attorney of Franklin County is "charged with the collection, receipt, safekeeping, transfer, or disbursement of public money" and more particularly with the public money mentioned in the indictment.

"1. Under the laws defining his duties a county auditor is not an officer charged with the possession and custody of money belonging to the state within the meaning of the 15th section of the act of April 15, 1858 (S. & C. 1606)."—(Being §12873 GC at the time mentioned in the indictment in the instant case.)

"2. An indictment charging the defendant, a county auditor, with converting to his own use money belonging to the State of Ohio, 'which said money had then and there come into the possession and custody of the said defendant by virtue of his office,' does not state facts sufficient to constitute an offense within the meaning of the 15th section above referred to." State of Ohio v. Joseph H. Newton, 26 Oh St 265.

In the foregoing case Newton was indicted as county auditor, "being charged as such officer with the collection, receipt, safe-keeping, transfer, and disbursement of the public moneys, to-wit: $2000 belonging to the State of Ohio, did unlawfully, etc., convert to his own use, which said money had then and there come into the possession and custody of the said Joseph H. Newton by virtue of his office, and in his discharge of the duties thereof, whereby he is guilty of embezzlement, etc."

The trial court sustained a demurrer to the indictment on the ground that the facts stated do not constitute an offense punishable by the laws of this state. The prosecuting attorney went to the Supreme Court on exceptions to obtain a decision determining the law to govern in similar cases.

The indictment was found under Section 15 of the Independent Treasury Act (S. & C. 1610), and was substantially in the words of that section. (Being §12873 GC, at the time mentioned in the indictment in the instant case.)

Gilmore, J., in delivering the opinion of the Supreme Court in the Newton case on p. 270 says:.

"The real question raised by the demurrer to the indictment is this: Is a county auditor an officer 'charged with the collection, receipt, safekeeping, transfer, and disbursement of the public money, or any part thereof belonging to the state; within the meaning of the fifteenth section above quoted?"

"The machinery provided by law for the collection, receipt, safekeeping, and disbursement of the public money, is extensive and complicated; requiring in its operation the assistance of * * *, state and county auditors, state and county treasurers, and other officers, each of whom has designated duties to perform, of a nature distinct from those to be performed by any others; and while there must be consecutive cooperation among them in order to produce the required result, yet each officer is responsible only for the faithful performance of the duties imposed upon him by law; and for

unfaithfulness is only liable to the penalties denounced against unfaithfulness in his particular office.

"In determining whether a county auditor, while acting in the line of his general duties, is an officer charged with duties enumerated in the fifteenth section, we have carefully examined the many statutory provisions to which our attention has been called by counsel for the state, and find that none of them, when fairly construed, either expressly or impliedly impose those duties upon county auditors; * * *.

"The correctness of this conclusion will be made manifest by a comparative view of the past and present policy of the state respecting the collection, receipt, safekeeping, and disbursement of the public revenues."

"Under the laws as they stood prior to the year 1858, the oath of office and official bond of a state or county treasurer were deemed sufficient, without the aid of criminal legislation, to insure the safety and proper application of all money that might come into their hands by virtue of their respective offices.

"* * * Defalcations by these officers (state and county treasurers) became frequent, * * * the evils became insufferable, and for the purpose of remedying them, the legislature, in 1858, passed * * * 'an act to establish the independent treasury of the state of Ohio.'

"* * * The provisions of these acts are much more stringent, in all respects, than those of previous acts, as applied to treasurers of state or county treasurers; and construing them together, as they must be, **it is impossible to avoid the conclusion that the penalties provided by the fifteenth section of the independent treasury act are particularly pointed at treasurers—state, county, township, city—and other officers whose duties are similar,** and not at auditors of state or county auditors." (Emphasis ours.)

"1. A statute defining a crime or offense cannot be extended, by construction, to persons or things not within its descriptive terms, though they appear to be within the reason and spirit of the statute.

"2. **Sec. 6841 R. S.** (§12873 **GC** at time in question), applies only to persons who are charged by law with the performance of the duties therein mentioned; and a deputy county treasurer is not within its provisions, nor subject to indictment thereunder." **State v. Meyers, 56 Oh St 340.**

Williams, J., in delivering the opinion of the court in the foregoing case on p. 346, says:

"It will be noticed that by its terms, §6841 **R. S.,** is restricted in its application, to persons who are 'charged with the collection, receipt, safekeeping, transfer or disbursement of the public money, or bequest, or any part thereof, belonging to the state, or to a county, township, municipal corporation, board of education, cemetery association or company of the state'; and the limitation is carried through §7299 **R. S.,** which declares that any failure or refusal to pay over, or to produce the public money, or any part thereof, by an officer or other person charged with the collection, etc., of such money, or to account to, or make settlement with, any proper and legal authority, of the official accounts of such officer or person, shall make a prima facie case of embezzlement; and, that section further declares, that on the trial of any such officer or person, for the embezzlement of the public money, under §6841 **R. S.,** it shall be sufficient evidence, for the purpose of showing a balance against him, to produce a transcript from the

books of the auditor of state, or the auditor of the county, or the records of the commissioners of the county; and the refusal of any such officer or person to pay any draft or warrant drawn upon him by the proper officer, for any public money in his hands, or any refusal by any public officer to pay over to his successor any public money or securities promptly on the legal requirement of any officer of the state or county, shall be taken. on the trial of an indictment against him for embezzlement, as prima facie evidence of such embezzlement.

"From these provisions, it seems reasonably certain that the persons who are subject to prosecution under §6841 R. S., are those only, who are charged by law with the performance of the duties, or some of them, therein mentioned. There are officers and persons to whom all these provisions of the statute aptly apply. For instance, by our statutes, county treasurers are charged with the collection of the public moneys belonging to the county, and with the collection of all taxes on the general duplicates placed in their hands by the county auditor, and of all taxes and assessments on any special duplicate furnished by proper authority; and they are clothed with ample remedies for enforcing the collection of the same. They are also charged with the custody, and safe-keeping of all public moneys received by them; with their apportionment and transfer to the proper boards and public agencies; and with the payment and disbursement of all public funds which come to their hands, in specified modes prescribed by law; which funds can lawfully be paid out, only on the order or warrant of the county auditor. They are furthermore charged with the duty of keeping official accounts of their receipts and disbursements, and of making semi-annual settlements with the county auditor, showing the amount received and paid out, with any balance remaining in the treasury; and with making a full annual settlement with the county commissioners of like purport; and they are required at the end of their official term, to pay over to their successors all moneys in their possession as treasurer, and deliver over all books, papers and other property so held by them. Duties of a similar nature are enjoined by law on the treasurer of state, and have been on treasurers of townships, of municipal corporations, boards of education, and cemetery associations, with respect to the public funds of which they have been given control. And the application of both sections §§6841 and 7299 R. S., to such officers and persons, is clear and indisputable. But we have found no provision of law by which a deputy or clerk of a county treasurer is charged with the performance of any of the duties above enumerated. The law goes no further than to authorize the treasurer, at his pleasure, to appoint one or more deputies, who hold their appointment only during the pleasure of the principal, who is answerable for the proceedings and misconduct of the deputy, and may, for his own protection, take a bond with sureties for the faithful performance of the services required of the deputy; but the latter takes no oath of office, nor gives bond to any public authority, and is in no sense a public officer, but a mere agent of the treasurer. Meachem on Public Officers, section 38. True, the statute confers authority on the deputy, during his appointment, to perform the duties of his principal; but that falls short of charging the former with the performance of the duties of the latter. The difference is the substantial one between an authority given to do an act, and enjoining the

performance of the act as a duty. That difference is plainly observable, under our legislation, in the relations of a treasurer and his deputy to each other, and to the public. The former is charged by law with the duty of collecting and disbursing the public moneys, and the doing of all acts necessary thereto, as required by law; but the latter is not so charged with the performance of those duties. The provisions made for the public security, are the oath which the officer is required to take, the obligation of the sureties on his official bond, and the penal laws against official malfeasance; while the officer must look to such assurance as he obtains from his deputy, for protection against losses from his misconduct. There may be every reason why a deputy who misappropriates the public moneys, should be punished to the same extent that the principal may be, for a like act; and if he cannot be under other sections of statute, adequate legislation to that end should be provided. But the language of §6841 **R. S.,** 'whoever being charged with the collection, etc., of the public money,' etc., is descriptive of the persons who may be guilty of the offenses it punishes, and is therefore descriptive of the offense; and, under that fundamental rule of strict construction applicable to all penal laws, a statute defining a crime cannot be extended by construction to persons or things not within its descriptive terms, though they may appear to be within the reason and spirit of the statute. Persons cannot be made subject to such statute by implication. Only those transactions are included in them which are within both their spirit and letter; and all doubts in the interpretation of such statutes are to be resolved in favor of the accused. Bishop on Statutory Crimes, section 194. As said by Chief Justice Marshall, in the case of the United States v. Wiltberger, 5 Wheat., 76-96: 'To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity or of kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases.'

"It is not sought to maintain the indictment under any other section of the statute, and as the defendant is not one of the persons included in the provisions of §6841 **R. S.,** the demurrers were properly sustained."

"County treasurers are, in their respective counties, the disbursing officers of the public revenues." **1 O. Jur. Counties, Sec. 195 as to Disbursement of Funds, p. 455; State v. Ellett, 47 Oh St 90.**

**Sec. 2460 GC,** at the time named in the indictment provided as follows:

"No claims against the county shall be paid otherwise than upon the allowance of the county commissioners, upon the warrant of the county auditor, except in those cases in which the amount due is fixed by law, or is authorized to be fixed by some other person or tribunal, in which case it shall be paid upon the warrant of the county auditor, upon the proper certificate of the person or tribunal allowing the claim. No public money shall be disbursed by the county commissioners, or any of them, but shall be disbursed by the county treasurer, upon the warrant of the county

auditor, specifying the name of the party entitled thereto on what account, and upon whose allowance, if not fixed by law."

It will be seen, therefore, that the disbursing officer, the county treasurer, is not authorized to incur expenses, but only to pay money out of the county treasury on the certificate of the auditor in the payment of expenses or obligations created by others.

**Sec. 3004 GC** in force at the time named in the indictment provides as follows::

"Additional allowance to prosecuting attorneys.—

"There shall be allowed annually to the prosecuting attorney in addition to his salary and to the allowance provided by §2914 GC, an amount equal to one-half the official salary, to provide for expenses which may be incurred by him in the performance of his official duties and in the furtherance of justice, not otherwise provided for. Upon the order of the prosecuting attorney the county auditor shall draw his warrant on the county treasurer payable to the prosecuting attorney or such other person as the order designates, for such amount as the order requires, not exceeding the amount provided for herein, and to be paid out of the general fund of the county.

"Bond for faithful performance of duty.—Provided that nothing shall be paid under this section until the prosecuting attorney shall have given bond to the state in a sum not less than his official salary to be fixed by the court of common pleas or probate court with sureties to be approved by either of said courts, conditioned that he will faithfully discharge all the duties enjoined upon him, by law. and pay over, according to law, all moneys by him, received in his official capacity. Such bond with the approval of such court of the amount thereof and sureties thereon and his oath of office inclosed therein shall be deposited with the county treasurer.

"Itemized statement verified.—The prosecuting attorney shall annually before the first Monday of January, file with the county auditor an itemized statement, duly verified by him, as to the manner in which fund has been expended during the current year, and shall if, any part of such fund remains in his hands unexpended, forthwith pay the same into the county treasury. Provided, that as to the year 1911, such fund shall be proportioned to the part of the year remaining after this act shall have become a law."

It will be seen, therefore, that under this section, the county treasurer disburses the fund, by payment of the auditor's warrant on the county treasurer payable to the prosecuting attorney or such other person as the order of the prosecutor requires, to provide for expenses incurred by him. In other words, the prosecutor does not disburse the fund within the terms of §12873 GC; but instead he incurs the expense, and the treasurer disburses to the prosecutor the money to meet such expenses by payment of the warrant of the auditor.

Under §3004 GC the prosecutor does not necessarily even have such public money in his possession. The term "There shall be allowed annually to the prosecuting attorney" means only such money shall be appropriated for his use, and not necessarily paid direct to him.

The prosecutor may issue his order designating the person entitled to payment of the expense incurred, or he may pay the expense incurred,

and order the auditor to issue a warrant in his favor as a refund of the expense paid by him.

But in practice small amounts are advanced to him on his order such as he feels he may need, and then deposited in the bank subject to withdrawal by check by the prosecutor in the payment of expenses incurred by him. But under this §3004 GC, he could draw an order every time he incurred any expense, and the auditor would be required to issue his warrant to such persons designated by the prosecutor, as long as the sum total of such warrants did not exceed the amount allowed the prosecutor for such expenses. Thus he need never have any of such fund in his possession, and surely he could not be charged with its safe-keeping under §12873 GC. The prosecutor has authority to incur such expenses but he is not charged with a duty to spend such money.

The prosecuting attorney, therefore, as such is not an officer charged with the collection, receipt, safe-keeping and disbursement of public money belonging to the county; but is authorized by law to incur expenses in the performance of the duties of his office and in furtherance of justice, which expenses are paid by the issuance of a warrant by the auditor on the county treasury, pay to the prosecuting attorney or such other person he may name, and the county treasurer disburses said public money to the person named in the warrant.

The motion to quash the indictment, consequently, is sustained.